**Received Electronically**
**September 6, 2024**
**United States Court of Appeals**
**For the First Circuit**

NO. _____

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

---

**David Testerman,**
**Karen Testerman**
**PLAINTIFF-APPELLANT**

-vs-

**New Hampshire Secretary of State, et al.**
**DEFENDANT-APPELLEE**

---

**On Appeal from the United States District Court**
**For the District of New Hampshire**
**The Honorable Chief Judge Landya B. McCafferty, Presiding**

**D.C. No. 1:24-cv-00020-LM-AJ**

---

## EMERGENCY MOTION FOR INTERLOCUTORY APPEAL AND REQUEST FOR EXPEDITED HEARING ON THE DISTRICT COURT'S EVIDENTIARY HEARING DATED SEPTEMBER 6, 2024

NOW COMES Republican primary voters <u>Karen Testerman</u> and NH state Representative <u>David Testerman</u>, (the "Plaintiffs-Appellants"), in the above captioned matter, pursuant to 28 U.S.C. § 1292(b), and respectfully asks this appeals court for an expedited hearing and interlocutory appeal of the District Court's evidentiary hearing on September 6, 2024, for emergency injunctive relief, for the following reasons:

1.      On July 18, 2024, the plaintiffs filed for their Third request for injunctive relief and expedited hearing, well in advance of the anticipated state primary election on September 10, 2024.  ECF 40.  **Exhibit A.**

2.      On August 14, 2024, U.S. Magistrate Judge Andrea K. Johnstone issued a procedural order for a preliminary injunctive hearing to be held on September 6, 2024.  **Order**, dated 08/14/2024, ECF 46.  **Exhibit B.**

3.      Among other things, the court instructed the parties to assemble: a single timeline; a single statement of agreed facts; a witness list; and exhibits list; a proposed Findings of Fact and Rulings of Law; and a proposed order.  *Id*.

4.      The parties prepared their respective documents for the court in anticipation of the injunctive relief hearing.  **Exhibit C**.

5.      However, at the hearing, the magistrate declared that it was instead an evidentiary hearing, and that the magistrate would issue a recommendation and report later, for which the parties would have an additional 14 days in which to object.  28 U.S.C. § 636.

6.      The primary election is now less than four (4) days away, and the plaintiffs will not have received a decision on their emergency motion for injunctive relief within sufficient time for the Secretary of State to respond.

7.      As a matter of statutory law, the court should have granted *de minimus* an injunction for those ballots that will be cast by Undeclared "voter[s] registered in the town or ward in which the election is held," in order that standing could be conferred on the plaintiffs so that the district court could get to the underlying complaint.  *See* N.H. R.S.A. § 659:27; *see also* N.H. R.S.A § 659:27-a (a voter may challenge another voter for many reasons, including the statement: "*This is a primary and the person seeking to vote in the (state political party name) _____ primary is not a declared member of the party he or she claims to be affiliated with*."

8.  Petitioners contend that if Undeclared Voters and Same-Day Registration Voters are allowed to participate in the upcoming 2024 New Hampshire state Primary on September 10, 2024, irreparable harm will have occurred and deprived the plaintiffs of their First Amendment right to freedom of association.  *See* <u>Plaintiff's Motion for Injunctive Relief</u>, ¶¶ 25 – 27, ECF 40, **<u>Exhibit A</u>**.

9.  The underlying complaint in this matter is: the Secretary of State may not interpret a state statute in a fashion which instructs a citizen to commit fraud (e.g., willful perjury).

10.  The two laws RSA 659:14 and RSA 654:34 cannot be interpreted separately without making RSA 654:34 unconstitutional.

11.  If a voter challenges another voter as not being a declared member of the party (RSA 659:27-a), then "the moderator shall not receive the vote of the person so challenged **until the person signs and gives to the moderator an affidavit** (emphasis added)," affirming their party affiliation.  (RSA 659:27).

12.  Under RSA 654:34, II (b), the law states: "A voter may also register as a member of a party **at any primary** by requesting to be registered as a member and voting the ballot of the party of the voter's choice. A voter may also **register once again as an undeclared voter after voting in a primary as a registered member of a party** by returning the card or signing the list of undeclared voters from the statewide centralized voter registration database provided for in paragraph V (**emphasis added**)."

13.  Read by itself, without the "open primary" language of RSA 659:14, the Secretary of State is encouraging Undeclared voters to commit fraud by: (1) allowing same-day registration as a *temporary* Republican party member; (2) voting in the Republican party as equal to publicly-affiliated party members; (3) then un-register at the back of the polling place, without

ever having met the public affiliations test. *See* Rosario v. Rockefeller, 410 U.S. 752 (1973); Eu v. San Francisco County Democratic Central Comm., 489 U.S. 214, 224 (1989); Tashjian v. Republican Party of Connecticut, 479 U.S. 208, 214 (1986); and Clingman v. Beaver, 544 U.S. 581, 592 (2005)

14.     If the state statutes RSA 659:14 and RSA 659:34, II (b) are read together, the following actions must take place:

15.     The party votes to adopt a rule in which undeclared voters may vote in the upcoming primary election until rescinded by the party.

16.     The party chairman notifies the Secretary of State of the "open" primary rule adoption.

17.     Undeclared voters may publicly-affiliate with the party "for the day", and then return to Undeclared status without committing fraud.

18.     The process repeats itself until the party rescinds its open primary rule.

19.     However, by interpreting the state statutes RSA 659:14 and RSA 654:34 separately, the Secretary of State is encouraging voters to perjure themselves, regarding party affiliation. *See* Motion for Injunctive Relief, ¶¶ 10 – 17, ECF 40, **Exhibit A**.

20.     Therefore, the plaintiffs move for emergency interlocutory relief and an expedited relief on its Motion for Injunctive Relief, ECF 40.


                                        Respectfully Submitted,

                                        DAVID TESTERMAN, *N.H. State Representative, Merrimack County District 03*

Dated:  September 6, 2024            By:   /s/ David Testerman
                                        David Testerman, *pro se*
                                        Dave@sanbornhall.net
                                        9 Stone Avenue

Franklin, New Hampshire 03235
(603) 320-9524

KAREN TESTERMAN, *both individually and as former New Hampshire Merrimack County Republican Committee (MCRC) Chair*

Dated:  September 6, 2024

By: ___/s/ Karen Testerman_____
Karen Testerman, *pro se*
karen@karentesterman.com
9 Stone Avenue
Franklin, New Hampshire 03235
(603) 934-7111

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was sent by electronic means to:

David Scanlan, Respondent
Secretary of State
ATTENTION: Brendan Avery O'Donnell
Election Law Unit Chief
New Hampshire Department of Justice
1 Granite Place, Concord, NH  03301
brendan.a.odonnell@doj.nh.gov
Telephone: 603-271-3658
Direct Dial: 603-271-1269

Chris Ager, Co-Respondent
Chairman, New Hampshire Republican State Committee
ATTENTION: Demetrio F. Aspiras, III, Esq.
Drummond Woodsum
670 N Commercial St, Ste 207
Manchester, NH 03101-1845
603-792-7414
603-716-2899 (fax)
daspiras@dwmlaw.com

Mark V. Franco, Esq.
Drummond Woodsum
84 Marginal Way, Ste 600
Portland, ME 04101
207 772-1941
mfranco@dwmlaw.com

Dated:  September 6, 2024        /s/ Karen Testerman
                                             Karen Testerman, *pro se*

# EXHIBIT  A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

KAREN TESTERMAN, ET AL.

PETITIONER(S),

v.

Case No. **1:24-cv-00020-LM-AJ**

NH SECRETARY OF STATE, ET AL,

RESPONDENT(S).

---

**PETITIONERS' THIRD EMERGENCY MOTION FOR INJUNCTIVE RELIEF**

NOW COMES Republican primary voters Karen Testerman and NH state Representative David Testerman, (the "Petitioners"), pursuant to Fed. R. Civ. P. 65 (a), and respectfully submits this Third Emergency Motion for Injunctive Relief, and requests a HEARING on the matter at the earliest possible time, stating as follows:

**Stage of the Proceedings:**

1.      On January 22, 2024, the Petitioners filed an Original Complaint as a "Complaint for Declaratory and Injunctive Relief." *See* Doc. No. 1.  The Petitioners also filed an "Emergency Motion for Injunctive Relief." *See* Doc. No. 2.

2.      Also on January 22, 2024, this Honorable Court denied the First Emergency Motion for Injunctive Relief, because the Petitioners failed to include an Affidavit with their Motion, pursuant to Rule 65(b)(1)(B). *See* Order – Doc. No. 4.

3.      On January 23, 2024, the Petitioners filed a Second Emergency Motion for Injunctive Relief. This time, the petitioners provided an Affidavit and proper notice to the named Co-Defendants. *See* Doc. No. 5.

4.      Also on January 23, 2024, this Honorable Court again denied the Motion for Injunctive Relief. This time, stating that in the Original Complaint: "*None of the plaintiffs' claims allege that their own constitutional rights have been violated*." *See* Order – Doc. No. 7, pg. 2.

5.      Because of the deficiencies in the Original Complaint and the necessary inclusion of the New Hampshire Republican State Committee (NHRSC) as an additional co-defendant, the Petitioners filed for Motion for Leave to File an Amended Complaint. *See* Doc. No. 31.

6.      On May 30, 2024, The Court had a hearing on the Motion for Leave to File an Amended Complaint. *See* Docket Entry dated 05/30/2024.

7.      At the conclusion of the motions hearing, Magistrate Johnstone stated that she would take the testimony and hearing exhibits under advisement and if there were further questions of the court, would give the parties an opportunity to respond. *See* Transcript of May 30, 2024, Hearing, pgs. 39: 9 - 25; 40: 1 - 8.

**Argument**

8.      The Petitioners request that this Court IMPOUND the votes of Undeclared Voters from being tabulated with the "publicly affiliated" Republican voters, until such time as this matter is fully resolved.

9.      Pursuant to Fed. R. Civ. P. 65 (b), the Affidavit of Karen Testerman accompanies this Motion. *See* Exhibit A.

10.     In determining whether to grant an injunction, this Court considers five basic factors: (1) likelihood of success on the merits; (2) immediate irreparable injury; (3) substantial harm to others; (4) the balance of the equities; and (5) in the public interest. *See* League of Women Voter of N.C. v. North Carolina, 769 F.3d 224, 236 (4th Cir. 2014).

11.     The Petitioners would proffer for judicial notice, under FRE 201 (c) (2), that the New Hampshire State Primary Election is currently scheduled for September 10, 2024. *See* https://www.sos.nh.gov/elections/2024-2025-political-calendar.

12.     The Petitioners again find themselves arguing that their constitutional rights will be violated, **in less than sixty days,** if the Secretary of State is allowed to confer on Undeclared Voters the same right to vote in the New Hampshire Republican State Primary Election as other registered Republican voters without having first met the "public affiliations" requirement.

13.     As the Petitioners have previously argued, to prevent "party raiding" – a process in which dedicated members of one party formally switch to another party to alter the outcome of that party's primary – a state may require party registration for a reasonable period of time before a primary election. *See* Rosario v. Rockefeller, 410 U.S. 752 (1973); *Cf.* Kusper v. Pontikes, 414 U.S. 51 (1973); *see also* Am. Compl. ¶¶ 31 – 32.

14.     Allowing Undeclared Voters to become "same-day Republican party members" violates the constitutional rights of the Petitioners to freedom of association to gather with fellow New Hampshire Republican Party members as they wish to choose a candidate-selection process that will produce the nominee who best represents its political platform. *See* Bd. of Elections v. Lopez Torres, 552 U.S. 196 (2008); 34 CFR § 9032.7 (a) (4).

15.     In the NEW HAMPSHIRE ELECTION PROCEDURE MANUAL (*See* Exhibit B), pages 48 – 49, published by the New Hampshire Secretary of State, Undeclared Voters *are given superlative rights* over registered Democratic and Republican primary members, because the Undeclareds are allowed to choose on Primary Day which party ballot they wish to select, while on Primary Day, Democratic and Republican Party members are restricted to the party affiliation that the voters declared under the "party affiliation" deadline of N.H. RSA § 654:34, (I) (a) (1).

16.     This creates an *unequal voting rights privilege* between Undeclareds and registered party members, in violation of the Equal Protection clause of the U.S. Constitution.  The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  *See* City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985).

17.     Therefore, under the Secretary of State's interpretation of N.H. RSA § 654:34, the state law is unconstitutional as applied.

18.     And, the actions (or inactions) of the co-defendants to correct the violation becomes a conspiracy against the Petitioners' constitutional voting rights, under 18 U.S.C. § 241 and 42 U.S.C. § 1983, because they are being denied their constitutional rights under color of law. And it also allows Undeclareds to affect the voting outcomes of state and presidential primaries without first becoming "publicly affiliated" with a political party.

19.     The U.S. Supreme Court stated in *Ex Parte Young*, an unconstitutional state statute is **void**, and therefore does not "impart to [the official] any immunity from responsibility to the supreme authority of the United States." *See Ex Parte Young*, 209 U.S. 123, 159 - 60 (1908).

20.     If the state law in which the Secretary of State seeks to enforce be a violation of the Federal Constitution, "the officer, in proceeding under such enactment, comes into conflict with the superior authority of that Constitution, and <u>he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States</u> (emphasis added)." *See* Edelman v. Jordan, 415 U.S. 651, 680 (1974) (*citing*) *Ex Parte Young*, 209 U.S. 123, 159-60 (1908).

21.     The Petitioners assert that the co-defendant David Scanlan is acting *ultra vires*, acting neither as a state employee nor in proxy as a federal official, and should be stripped of any Eleventh Amendment immunity because his actions are clearly outside the scope of his office.

22.     *Young* also held that "the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent <u>a continuing violation of federal law</u> (emphasis added)." *See* Green v. Mansour, 474 U.S. 64, 68 (1985) (*citing*) *Ex Parte Young* at 155-56.

23.     The Petitioners <u>will likely succeed on the merits</u> of this case, because previous U.S. Supreme Court decisions favor the Petitioners' position that same-day party registration of Undeclared Voters violates the Petitioners' rights of freedom of association with fellow "publicly affiliated" Republican voters in where that party registration must be for a reasonable period of time before a primary election. *See* Rosario v. Rockefeller, 410 U.S. 752 (1973).

24.     Unless this Court grants an immediate injunction, the Petitioners will suffer an <u>immediate, irreparable injury</u>, if Undeclared Voters are allowed to improperly affect the outcome of the <u>upcoming September 2024 state primary</u>, and <u>future</u> state and presidential primaries, despite the Supreme Court's clarifications in Rosario v. Rockefeller, 410 U.S. 752 (1973); Eu v. San Francisco County Democratic Central Comm., 489 U.S. 214, 224 (1989); Tashjian v.

Republican Party of Connecticut, 479 U.S. 208, 214 (1986); and Clingman v. Beaver, 544 U.S. 581, 592 (2005).

25.     The Petitioners also argue that not granting the injunctive relief will impose substantial harm to others, including party members of both the Democratic and Republican parties, in which Undeclared Voters will dilute the outcomes of their primary elections.

26.     The Petitioners argue that the "balance of the equities" to IMPOUND the votes cast by Undeclared Voters in both the Democratic and Republican State primaries favors the Petitioners and fellow party members who have been registered with their respective political parties for a reasonable period of time before a primary election.  This relief is precautionary and can cause no permanent harm because of the impounding; while on the other hand, failure to order impounding represents fundamental irreversible harm to the democratic voting process.

27.     And finally, it is in the public interest to grant this relief to protect the integrity of the election process from outside election interference, which is a foundational pillar of our country's structure upholding Constitutional freedoms, duties, and privileges.


WHEREFORE, the Petitioners respectfully request that this Court:

- GRANT a HEARING on the matter at the earliest possible time;

- IMMEDIATELY and *EX PARTE* IMPOUND the votes of Undeclared Voters from being tabulated with the "publicly affiliated" Republican voters, until such time as this matter is fully resolved; and

- For such other and further relief as is just and proper.


Respectfully Submitted,

DAVID TESTERMAN, *N.H. State Representative, Merrimack County District 03*

Dated: July 18, 2024

By: _David K. Tester_

David Testerman, *pro se*
Dave@sanbornhall.net
9 Stone Avenue
Franklin, New Hampshire 03235
(603) 320-9524

KAREN TESTERMAN, *both individually and as former New Hampshire Merrimack County Republican Committee (MCRC) Chair*

Dated: July 18, 2024

By: _Karen Testerman_

Karen Testerman, *pro se*
karen@karentesterman.com
9 Stone Avenue
Franklin, New Hampshire 03235
(603) 934-7111

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was sent <u>by regular mail</u> and by electronic means to:

David Scanlan, Respondent
Secretary of State
ATTENTION: Brendan Avery O'Donnell
Election Law Unit Chief
New Hampshire Department of Justice
1 Granite Place, Concord, NH  03301
brendan.a.odonnell@doj.nh.gov
Telephone: 603-271-3658
Direct Dial: 603-271-1269

Chris Ager, Co-Respondent
Chairman, New Hampshire Republican State Committee
ATTENTION: Attorney Bryan K. Gould
c/o CLEVELAND, WATERS, AND BASS, P.A.
2 Capitol Plaza
Concord, NH 03302-1137

Demetrio F. Aspiras, III, Esq.
Drummond Woodsum
670 N Commercial St, Ste 207
Manchester, NH 03101-1845
603-792-7414
603-716-2899 (fax)
daspiras@dwmlaw.com

Mark V. Franco, Esq.
Drummond Woodsum
84 Marginal Way, Ste 600
Portland, ME 04101
207 772-1941
mfranco@dwmlaw.com

Dated:  July 17, 2024

Karen Testerman, *pro se*

Petitioner's Third Emergency Motion for Injunctive Relief - 8

# EXHIBIT  A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

KAREN TESTERMAN, ET AL.

PETITIONER(S),

v.

Case No. **1:24-cv-00020-LM-AJ**

NH SECRETARY OF STATE, ET AL,

RESPONDENT(S).

---

## PETITIONER'S AFFIDAVIT IN SUPPORT OF THIRD EMERGENCY MOTION FOR INJUNCTIVE RELIEF

Karen Testerman being duly sworn deposes and says as follows:

1. I am a petitioner / plaintiff in the above action.

2. I offer this affidavit based upon my personal knowledge in this matter.

3. I am a registered member of the Republican Party of New Hampshire.

4. At the time of the filing of this Complaint, I was also the duly-elected Chair of the Merrimack County Republican Committee.

5. I attest to the Statement of Facts, enumerated as ¶¶ 14 – 30 in the First Amended Complaint, as to be True and Correct to the best of my knowledge.

6. I find that my constitutional rights will again be violated <u>in less than sixty days</u>, if the Secretary of State is allowed to confer on Undeclared Voters the same right to vote in

Affidavit - Karen Testerman in Support of - Third Emergency Motion for Injunctive Relief - 1

the New Hampshire Republican State Primary Election as other registered Republican voters without having first met the "public affiliations" requirement.

7. Allowing Undeclared Voters to become "same-day Republican party members" violates my constitutional rights to freedom of association, as described in <u>Rosario v. Rockefeller</u>, 410 U.S. 752, 761-62 (1973).

8. Unless this Court grants an immediate injunction, I will suffer an <u>immediate, irreparable injury</u>, if Undeclared Voters are allowed to improperly affect the outcome of the upcoming September 2024 state primary.

9. This requested relief is precautionary and can cause no permanent harm because of the impounding; while on the other hand, failure to order impounding represents fundamental irreversible harm to my constitutional rights to participate in the democratic voting process.


FURTHER AFFIANT SAITH NAUGHT.


KAREN TESTERMAN, *both individually and as former New Hampshire Merrimack County Republican Committee (MCRC) Chair*

Dated:  July 19, 2024

By: *Karen Testerman*
Karen Testerman, *pro se*
karen@karentesterman.com
9 Stone Avenue
Franklin, New Hampshire 03235
(603) 934-7111

<u>**A F F I D A V I T**</u>

THE STATE OF NEW HAMPSHIRE           §
                                     §
COUNTY OF MERRIMACK                   §

_____

     BE IT REMEMBERED that on this __19th__ day of JULY 2024, before me, the undersigned, a Notary Public in and for the County and State aforesaid, came KAREN TESTERMAN, who is personally known to me to be the same person who executed the foregoing Affidavit and duly acknowledged the execution of the same.

     IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed my official seal on the date and year last.

_____

NOTARY PUBLIC

My Commission Expires:

__1/16/2029_____

# EXHIBIT B



# NEW HAMPSHIRE ELECTION PROCEDURE MANUAL: 2022-2023

PUBLISHED BY THE DEPARTMENT OF STATE

EPM – 2022 – 1.0



registered.

When supervisors receive a notice of transfer or official notice of death, generally, do not send a "notice of removal." Electio*Net* will preserve a record of all electronic notices. Supervisors must record all paper notices they receive or send so that they may justify their actions in the future, if necessary. RSA 654:36; RSA 654:37; RSA 654:44.

CHANGING PARTY AFFILIATION

A registered voter may change his or her party affiliation any time the supervisors are in session, except between the first day of the filing period for a state or presidential primary and up to the day of the primary election. When a voter moves from one New Hampshire town to another, treat the voter as a new registrant for this purpose. All new registrants may choose any party affiliation, regardless of the voter's party affiliation where the voter was previously registered.

The supervisors must hold at least one meeting prior to the filing period for the change of party affiliation by registered voters. For the Presidential Primary, the session shall be on the Friday preceding the first day of the filing period, between 7:00 PM and 7:30 PM. For the State Primary, the session shall be on Tuesday before the first Wednesday in June, between 7:00 PM and 7:30 PM. RSA 654:32.

The law authorizes city and town clerks to accept applications to change party affiliation.

Clerks then provide the party change requests to the supervisors. The supervisors will not act until after the state primary on applications to change party received after the filing period has started,.

An unaffiliated voter may declare his or her affiliation at the primary and may vote the ballot of his new party.

A voter who has declared an affiliation with a party prior to a primary election may only vote in that party's primary. A voter may write in the name of their preferred candidate on their own party's ballot. If this candidate is on a different party's ballot, the vote will not count as a vote in the other party's total. Instead, the write-in vote will count as a vote for that candidate in the party the voter received a ballot for.

For example, a voter writes in "John Doe" on the Party A ballot for governor. John Doe is a candidate for Party B's nomination. This voter's write-in vote for John Doe will not be counted in the votes for John Doe on the Party B ballot. The vote will count as a vote for John Doe on the Party A ballot only. This provides the voter an opportunity to express his or her support for the candidate.

The voter can change parties on the day of the primary election, but then is <u>not</u> allowed to vote at all in that primary.

A voter may be registered to vote as a member of any recognized political party or as undeclared. An undeclared voter is not a member of any party. Undeclared voters are also called unaffiliated voters. RSA 654:34.

An undeclared voter may declare his affiliation at the primary and vote the ballot of his new party. The voter may, after voting and before leaving the polling place, change back to undeclared by signing his or her name on a list of voters prepared for the purpose of recording party changes back to undeclared. The voter may also change back to undeclared after the election at the clerk's office or a session of the supervisors. RSA 654:34.

Voters who register at the primary election as undeclared, then affiliate with a party when checking in to obtain a ballot and vote in that party's primary, may change back to undeclared by filling out the "Return to Undeclared" form available in Electio*Net*. See this form on page 439. RSA 654:34.

Any person who is a registered member of a party and votes a ballot of that party at a primary election SHALL NOT fill out a card to change his or her party status to unaffiliated on primary election day. RSA

654:34, III and V. To change party affiliation or to become undeclared, a voter registered as affiliated must complete a party change form at the clerk's office or at a session of the supervisors of the checklist after election day.

### CHANGE OF ADDRESS WITHIN TOWN OR WARD

Supervisors must enter a change of address in ElectioNet if they:

(a) Observe an address change on the marked checklist from an election;

(b) Receive evidence of a permanent change of address within the town/ward from the U.S. Postal Service (the ElectioNet record may be updated based on the Postal Service report of a permanent move); or

(c) Obtain appropriate documentation indicating that a person has moved within his or her town or ward, or that the street name or number has been changed for a voter that has not moved.

### PHYSICAL (DOMICILE) ADDRESS FOR EACH VOTER

Supervisors shall ensure that each voter has a domicile address that represents a real location consistent with a recognized addressing formula within the town or ward of the person's domicile. If there is no physical address, the physical street name should correspond to a recognized legal exemption from the physical address requirement.

### REMOVAL OF DUPLICATE RECORDS

Supervisors are obligated to address duplicate voter records – records for one voter that appear in more than one New Hampshire town or city – in a timely manner. Supervisors must use the Inquiry function in ElectioNet when registering new voters, thereby avoiding creation of duplicates.

The Secretary of State is required to analyze all records in the Statewide Voter Registration System to identify any where two voters have the same date-of-birth, place-of-birth, and a substantially similar name. This information will be forwarded to the supervisors for teach town or city where either person is registered. The supervisors must examine local records and collaborate with colleagues in the other town/city to determine if these are duplicate records.

If the records are duplicate, the supervisors must determine in which town or city the voter is currently domiciled. Most often this will be where the voter most recently registered. Corrections must be made to the checklist.

Supervisors must compare the voting history for both. If the person voted in the same election in two towns/cities, the Supervisors must report this to the Attorney General.

If the records are not duplicate, there are two different voters, keep a record in case these voters appear on a future potential duplicate voter list.

The Supervisors are required to report the results of their work to resolve possible duplicate registrations back to the Secretary of State. This information will help reduce the frequency of these same voters being reported as possible duplicates on subsequent reports. RSA 654:45, I(b).

## Campaigning

Political advertising used in any election, including local elections, must bear the name and address of some person responsible for the advertising. RSA 664: 1; RSA 664:14. The courts have held that a communication is political advertising only if it explicitly advocates the success or defeat of any party, measure, or person at any election. RSA 664:17 controls the placement of political advertising (signs).

RSA 664:17 prohibits placing or affixing political advertising on any public property, including highway rights of way. Nor may political advertising be placed on or affixed to private property without the owner's consent.

This law allows signs to be placed within a State-owned right-of-way, but only if the

EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Karen Testerman, et al.

      v.                             Civ. No. 24-cv-20-LM-AJ

NH Secretary of State, et al.


**PROCEDURAL ORDER: PRELIMINARY INJUNCTION HEARING**

The preliminary injunction hearing in this case will be held on **September 6, 2024, at 11:00 AM.**

On or before **August 30, 2024,** the parties shall jointly file:

- a **single timeline** setting forth all pertinent dates, times, and events, in whatever format the parties jointly choose (in other words, the parties need not comply with Local Rule 5.1(a) with respect to the timeline);

- a **single Statement of Agreed Facts** followed by a Statement of Disputed Facts. The disputed facts are not an invitation to advocacy (i.e., "The plaintiff can not establish irreparable harm because......" or "There is a strong likelihood of success on the merits because...."). The parties should simply list facts they intend to establish at the hearing, or which they contend will not be established at the hearing.

On or before 12:00 p.m. on **September 3, 2024,** each party shall file:

- a witness list;

- an exhibit list; and

- proposed findings of fact and rulings of law.

Counsel shall confer (preferably in person, or else by telephone) in a good-faith effort to identify all areas of agreement and to make the statement of facts and timeline as comprehensive as possible, so that open court testimony can focus on matters truly in dispute. Counsel are expressly discouraged from simply "recycling" factual statements submitted during previous motion practice in this case.

 Counsel shall confer before the hearing to identify all areas of agreement and disagreement as to the admissibility of each exhibit.

On or before **4:00 p.m. on September 5, 2024,** the plaintiff shall file a proposed order in compliance with Rule 65 and Local Rule 65.1. The order shall specifically address the amount of the bond, if any, under Rule 65(c).

**SO ORDERED.**

_____
Andrea K. Johnstone
United States Magistrate Judge

August 14, 2024

cc:  David Testerman, pro se
     Karen Testerman, pro se
     Counsel of Record

EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

JORGENSEN, ET AL.

                              PLAINTIFF(S),

v.

                              Case No. **1:24-cv-00020-LM-AJ**

NH SECRETARY OF STATE, ET AL,

                              DEFENDANT(S).

---

### PLAINTIFFS' PROPOSED FINDINGS OF FACT AND RULINGS OF LAW

NOW COMES Republican primary voters <u>Karen Testerman</u> and NH state Representative <u>David Testerman</u>, (the "Plaintiffs"), in the above captioned matter, respectfully submits the plaintiff's proposed findings of fact and Rulings of Law, stating as follows:

### Findings of Fact

1.      The Joint Statement on Agreed Upon Facts will be filed under separate cover, as soon as both co-defendants have had sufficient time on which to confer and proffer their statements.

### Rulings of Law

#### NATURE OF THE ACTION

2.      Until recently, both the Chairman of the New Hampshire Republican State Committee ("NHRSC") (aka "NHGOP") (the "Chair") and the New Hampshire Secretary of State's office

("NH SOS"), have set aside the provisions of the state law governing the "<u>Special Provisions for State and Presidential Primary Elections</u>" as written – N.H. § RSA 659:14.

3.      Under a plain reading of the statute, it states <u>*inter alia*</u> that:

"**<u>*If the rules of a party permit*</u>** <u>*a person who is registered as an undeclared voter to vote in the party's primary, any person desiring to vote in that party's primary shall also announce the name of that party at the time of announcing the person's name*</u> (**emphasis added**)."

N.H. Rev. Stat. § 659:14. Simply put, if the Party's Rules or Bylaws expressly allow it, then Undeclared Voters may vote in the Party's Primary.

4.      The statute goes on to say: "<u>*The party chairman shall notify the secretary of state in writing prior to the filing period for state offices*</u> **<u>*whether the party has adopted such a rule*</u>** (**emphasis added**)." <u>*Id*</u>.   Again, simply put, the statute requires that the Party Chair submit *in writing* whether the Party's Primary elections will be *open* to Undeclared Voters.

5.      Currently, the Party's Bylaws (https://nh.gop/bylaws/), the Party's Platform (https://nh.gop/platform/), and the State Convention Organization Committee Report (https://nh.gop/organization_report/) **<u>*are silent*</u>** as to whether the Party has adopted such a rule to authorize Undeclared Voters to vote in the Party's primary.

6.      And the Secretary of State has acknowledged that the NH SOS does not have in its possession any correspondence from the NHGOP Chair declaring the Party's Primary to be *open* to Undeclared Voters.

7.      On October 9, 2023, Secretary of State Scanlan replied to a constituent's e-mail, stating:

"In response to your RSA 91-A request my office has not been able to locate any 'written notice' of a Republican State Party rule change relative [to] which voters can participate in a New Hampshire primary election.  The current practice of permitting undeclared voters to declare affiliation with the Republican Party and then change back to

undeclared or remain in the party after voting has been in place for decades." **Exhibit 108**.

8.      In an October 26, 2023 news article, Secretary of State David Scanlan is quoted as saying:

> "I have received no such letter that would require me to make any change . . . . The presidential primary will be conducted in the same manner it has been conducted for decades.  The party chair is required to write a letter to the Secretary of State to inform him or her **of any change in party rules** that would determine who can participate in a party primary and that letter has to be delivered before the filing period for office opens up (**emphasis added**)." _See_ **Scanlan: Undeclared Voters Won't Be Blocked from Taking GOP Ballots in FITN Primary, https://indepthnh.org/2023/10/26/gop-resolution-wont-change-presidential-primary/**, **Exhibit 105**.

9.      In both instances, the Secretary of State misquotes RSA § 659:14, which states that the party chairman must notify the Secretary as to "_whether the party has adopted such a rule_" to allow for an open primary has occurred, and not to a change-in-circumstance notification.

10.     Because of this confusion (in where that the Secretary of State's office has maintained a practice of allowing Undeclared Voters to participate in both the Democratic and Republican primaries), and in order to prevent "party raiding",[1] the Party at its Annual Meeting on January

---

[1] **NBC News** reported that because President Biden's name would not appear on the New Hampshire Democratic Party ballot, a newly-formed super-PAC **Primary Pivot** encouraged Democratic voters to temporarily switch their party affiliations to "undeclared" so they ccould vote against Trump in the GOP primary.  _See_ New Hampshire Democrats weigh whether to cross over and vote in GOP primary, dated October 6, 2023, https://www.nbcnews.com/politics/2024-election/new-hampshire-democrats-weigh-whether-cross-vote-gop-primary-rcna118756.

_See also_ **NPR's All Things Considered**, aired January 17, 2024, transcript https://www.npr.org/2024/01/17/1225253439/thousands-of-democratic-new-hampshire-voters-are-switching-party-affiliation.

Even former New Hampshire U.S. Senator Gordon Humphrey actively interfered in the election by targeting unregistered college voters to sign up for same-day registration in an effort to spoil Republican

28, 2023, the NH GOP Annual Meeting (the Party's highest governing authority), voted to **close** its Presidential Primary for January 2024.  **Exhibit 102.**

11.      Over twelve months ago, under Resolution #2, the NH GOP Annual Meeting directed that Party Chair Chris Ager, *inter alia*, should notify the Secretary of State "*in writing prior to the filing period of state offices that the Republican Party of New Hampshire has adopted the rule that **only voters registered as Republicans** prior to any primary election may receive a Republican ballot* (**emphasis added**)." **Exhibit 103**.  In short, the Party voted to close its Presidential Primary in order to avoid "party raiding." *See* California Democratic Party v. Jones, 530 U.S. 567, 572 (2000).

12.      Despite repeated attempts by other Party Officials, Party Chair Chris Ager refused to notify the NH SOS in writing that the upcoming 2024 Presidential Primary was ***closed to Undeclared Voters*** as was voted upon and approved by the NHGOP sitting in its Annual Meeting.

13.      In an email dated October 6, 2023, Plaintiff and Merrimack County Republican Committee ("MCRC") Chairman Karen Testerman implored Party Chair Chris Ager to notify the NH SOS in writing that the 2024 Presidential Primary was officially closed to Undeclared Voters.  As part of constructive notice, New Hampshire Secretary of State David Scanlan was copied on the email, and therefore *knew or should have known* that there exists no authorization to include Undeclared Voters in the upcoming Presidential Primary.  **Exhibit 104**.

---

party member votes for Donald Trump.  *See* **NH Journal** Former Sen. Humphrey Launches Ad Campaign Urging College Students to Stop Trump, dated January 19, 2024, https://nhjournal.com/former-u-s-senator-humphrey-launches-ad-campaign-urging-college-students-to-stop-trump/.

14.    In a reply email also dated October 6, 2023, Party Chair Chris Ager stated that the "*Resolution violates state law and cannot be adopted*." **Exhibit 105**. However, Chair Ager did not say what state law the Resolution violated.

15.    The reply email from Chair Ager also stated that the *suggestion* would require adoption of a By-Law change at the upcoming NH GOP Annual Meeting, slated for January 13, 2024. *Id*. However, Chair Ager's assertion that a By-Law change must be adopted to ***close*** the 2024 Presidential Primary is a misinterpretation of N.H. RSA § 659:14 which requires a proactive action by the Chair to ***open*** the Primary in writing to the NH SOS.

*16*.    Chair Ager's suggestion is the exact opposite of what must occur – there must be a By-Law or Rule of the Party on point, authorizing Undeclared Voters to participate in the 2024 Presidential Primary **AND** a letter from the NHGOP Chair notifying the Secretary of State of said Bylaw provision.  To-date, ***there is no such Rule or Bylaw of the NHGOP authorizing the participation of Undeclared Voters in their primary elections.***

## JURISDICTION AND VENUE

17.    This court has subject matter jurisdiction under U.S.C.A. Const. Amend 1; N.H. Rev. Stat. § 659:14. Petitioner asserts jurisdiction pursuant to 28 U.S.C. § 1331 as federal questions in that Counts I and II are filed under 42 U.S.C. § 1983 and Count III seeks a declaratory judgment based on the federal constitutional right to freedom of association.

18.    In addition, this Court may issue all writs necessary or appropriate in aid of its respective jurisdiction, agreeable to the usages and principles of law.  *See* 28 U.S.C. 1651; United States v. Field, C.A.2 (N.Y.) 1951, 193 F.2d 92, certiorari denied 72 S.Ct. 202, 342 U.S. 894, 96 L.Ed. 670, certiorari dismissed 72 S.Ct. 303, 342 U.S. 908, 96 L.Ed. 679.

### STAGE OF THE PROCEEDINGS

19.     On January 22, 2024, the Petitioners filed an Original Complaint as a "Complaint for Declaratory and Injunctive Relief."  ECF 1.  The Petitioners also filed an "Emergency Motion for Injunctive Relief."  ECF 2.

20.     Also on January 22, 2024, the court denied the First Emergency Motion for Injunctive Relief, because the Petitioners failed to include an Affidavit with their Motion, pursuant to Rule 65(b)(1)(B).  ECF 4.

21.     On January 23, 2024, the Petitioners filed a Second Emergency Motion for Injunctive Relief.  This time, the petitioners provided an Affidavit and proper notice to the named Co-Defendants.  ECF 5.

22.     Also on January 23, 2024, the court again denied the Motion for Injunctive Relief.  This time, stating that in the Original Complaint: "_None of the plaintiffs' claims allege that their own constitutional rights have been violated_."  _See_ Order, pg. 2.  ECF 7.

23.     Because of the deficiencies in the Original Complaint and because the court granted the joinder of the New Hampshire Republican State Committee (NHRSC) on April 4, 2024, as an additional co-defendant, the Petitioners filed for Motion for Leave to File an Amended Complaint. ECF 31.

24.     On May 30, 2024, The Court had a hearing on the Motion for Leave to File an Amended Complaint.  _See_ Docket Entry dated 05/30/2024.

25.     At the conclusion of the motions hearing, Magistrate Johnstone stated that she would take the testimony and hearing exhibits under advisement and if there were further questions of the court, would give the parties an opportunity to respond.

26.     On August 14, 2024, the magistrate filed a Report and Recommendation, stating that the

plaintiffs' motion for leave to amend (ECF 31) should be denied based on futility.  Further, the

magistrate recommended that the original complaint (ECF 1) remains the operative complaint in

the matter.  *See* ECF Docket Report (ECF 45).

27.     On October 28, 2024, the plaintiffs filed their Objections to the Magistrate's Report and

Recommendations, citing their reasons for why the amended complaint was not futile.  ECF 47.

28.     The following day, on October 29, 2024, the court approved the Magistrate's Report and

Recommendation.  *See* Endorsed Order, ECF Docket Report, 08/29/2024.


## ANALYSIS

29.     A preliminary injunction is appropriate where: (1) the party is likely to succeed on the

merits; (2) the parties are likely to suffer immediate, irreparable injury-in-fact unless the

injunction is issued; (3) a balancing of the equities weighs in favor of an injunction; and (4) the

injunction is in the public interest.  *See* League of Women Voter of N.C. v. North Carolina,

769 F.3d 224, 236 (4th Cir. 2014).

30.     Petitioners contend that if Undeclared Voters and Same-Day Registration Voters are

allowed to participate in the upcoming 2024 New Hampshire state Primary on September 10,

2024, irreparable harm will have occurred and deprived the plaintiffs[2] of their First Amendment

right to freedom of association.

31.     In order to prevent "party raiding" – a process in which dedicated members of one party

formally switch to another party to alter the outcome of that party's primary – a State may

---

[2] In their Original Complaint, the plaintiffs improperly attempted to establish standing in the name of "the Party",
rather than to *allege that their own constitutional rights have been violated*."  *See* Order, pg. 2.  ECF 7.  *In
arguendo*, we will presume that the *pro se* litigants inferred that their constitutional rights have been violated.

require party registration for a reasonable period of time before a primary election.  *See* <u>Rosario</u> <u>v. Rockefeller</u>, 410 U.S. 752 (1973); *Cf*. <u>Kusper v. Pontikes</u>, 414 U.S. 51 (1973).

32.     Although not public officials, political party chairpersons play substantial and discernible roles in state government beyond their statutorily enumerated duties.  *See* <u>Igneri v. Moore</u>, 898 F.2d 870, 874 (2d Cir. 1990).  Therefore, political party chairpersons owe a fiduciary duty to the general citizenry based on his "participation in" and "effective control over the processes of government."  *See* <u>United States v. Margiotta</u>, 688 F.2d 108, 125 (2d Cir. 1982), *cert. denied*.


**Plaintiffs have standing under *Article III* of the U.S. Constitution**

33.     In its Objection to the Magistrate's Report and Recommendations, the plaintiffs provided several Supreme Court decisions in where that as a single voter, or group of voters, have asserted their right to challenge the perceived interference by state regulation to their right of freedom of association, and have had proper standing before the court.  ECF 47.

34.     In their reply, the Secretary of State attempted to dissect those cases as standing was not the case-in-chief for those decisions.  ECF 48.  However, only <u>Lacasa v. Townley</u>, 883 F.Supp.2d. 1231 (S.D. Fla. 2012) was regarding standing because the plaintiffs were <u>not</u> members of the Democratic Party and therefore lacked standing to challenge.  *See* <u>Lacasa</u> at 1238 ("Non-party members did not have a First Amendment associational interest in voting in the party's primary.").  Here, the plaintiffs do have a First Amendment associational interest in voting in the party's primary.

35.     It is for those cases cited, (ECF 47, ¶¶ 9 – 13) that the plaintiffs have standing.

**The Plaintiffs have a concrete, injury-in-fact for purposes of standing under *Article III*.**

36.     The plaintiffs have also endured injury-in-fact in this matter.  They have been (as well as the two previous petitioners who withdrew) threatened with lawsuits for exercising their rights to redress grievances in which to associate freely with fellow like-minded Republicans.

37.     Plaintiff Karen Testerman and former plaintiff Patricia Jorgensen were illegally removed from their officer positions with the Merrimack County Republican Committee, as Chairman and Vice Chairman, because of the filing of this complaint.

38.     And without an injunction, Undeclared Voters will be able to affect the outcomes of local town, city and county primary races in the upcoming state primary election on September 10, 2024, in where that **a single vote** can make the difference.  Therefore, sufficient injury-in-fact is traceable to the challenged conduct and that is likely to be redressed by lawsuit.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

**This Court has authority to issue any writs necessary**

39.     The Secretary of State has argued that "the United States Supreme Court ruled that Eleventh Amendment immunity bars suits against states in federal court that allege violations of state law," citing Pennhurst State Sch. & Hosp. v. Halderman "(Pennhurst II)", 465 U.S. 89, 106 (1984).  *See* Sec'y of State's Renewed MTD, ¶ 26 (ECF 49).

40.     However, the Supreme Court's decision in *Pennhurst II* did not deprive the federal court of its jurisdiction under the "All Writs Act" to remedy conduct by state that violated the constitutional rights of prisoners. *See* 28 U.S.C. 1651; Benjamin v. Malcolm, C.A.2 (N.Y.) 1986, 803 F.2d 46, certiorari denied 107 S.Ct. 1358, 480 U.S. 910, 94 L.Ed.2d 528.

41.     District Courts of the United States may issue all writs necessary or appropriate in aid of their respective jurisdictions, agreeable to the usages and principles of law.  United States v.

Field, C.A.2 (N.Y.) 1951, 193 F.2d 92, certiorari denied 72 S.Ct. 202, 342 U.S. 894, 96 L.Ed. 670, certiorari dismissed 72 S.Ct. 303, 342 U.S. 908, 96 L.Ed. 679.

42.    The *Ex parte Young* doctrine allows suits like the Testerman's for declaratory or injunctive relief against state officers in their official capacities.   Reed v. Goertz, 598 U.S. 230, 234, 143 S.Ct. 955, 960, 215 L.Ed.2d 218 (2023).

43.    Therefore, the Testerman's pleas for injunctive relief is proper before this court.

**Petitioners are entitled to Equal Protection under the law.**

44.    Furthermore, the Petitioners are being treated differently than Undeclared voters.

45.    The Secretary of State more succinctly states the Petitioners' argument for how the Petitioners are treated differently than Undeclared voters, when in his Objection, the Secretary interprets the statute as follows:

> "All [undeclared] voters may **choose to remain undeclared** <u>prior to the date of a party primary</u>, **at which time** <u>they may affiliate with a party</u> **and** *vote in that party's primary*. See RSA 654:34, II (emphasis added)." *<u>See</u> <u>Sec't of State's Obj.</u>* at ¶ 23 (ECF 43).

46.    Under this interpretation by the Secretary of State's office, the state statute RSA 654:34 is unconstitutional.

47.    If a Republican or Democratic voter follows the law under RSA 654:34, then if they choose to change party affiliation between the first Wednesday in June and the day of the primary, then they may do so, but under penalty of being barred from voting on primary day.

48.    Whereas Undeclared voters have no public affiliation and are treated to **choose** whichever party's ballot they prefer, thereby undermining the critical role in determining both the party's message and its prospects of success in the electoral contest.

49.    Such an interpretation of the two statutes separately renders the purpose of closing the primary in RSA 659:14 *meaningless* and creates two separate classes of voters – publicly-affiliated party voters and non-party voters who may choose to never publicly-affiliate yet still vote in a primary for which they have no freedom to associate.

50.    And as such, this affects the petitioners rights of Equal Protection to associate with like-minded publicly-affiliated members of a political party for the advancement of common political goals and ideas.  Timmons v. Twin Cities Area New Party, 520 U.S. 351, 357 (1997).

51.    To be sure, Undeclared and independent voters have the right to not associate with a political party, sparing them the annoyance of being hounded for donations, or being bombarded with political mail advertisements, or the constant phone texts from candidates, and push cards from partisan solicitors on their doorsteps.

52.    But, as established by precedence, a voter must establish a minimum period of public affiliation in order to receive a party's primary ballot.  Rosario v. Rockefeller, 410 U.S. 752 (1973); *cf*. Kusper v. Pontikes, 414 U.S. 51 (1973).

53.    The Report and Recommendation completely misses the point of the constitutional argument for primary voting integrity when it said: "The plaintiffs have the same right as "party raiders" [] to vote in the primary of their choice, and then change their status post-election." *R&R*, pg. 15.[3]

54.    It is because the Petitioners are Republicans and do not wish to have their votes spoiled, diluted, confused, or misapplied by including non-party members in the primary election,

---

[3] In actuality, this is incorrect.  Publicly-affiliated, regular party members may not change their status immediately *post-election* like Undeclared may do. Instead, they must wait until the next regularly scheduled meeting of the Supervisor of the Checklist in their respective Towns.

thereby violating the petitioners' rights to freedom of association with individuals of their own choosing. _See_ Adickes v. S. H. Kress & Co., 398 U.S. 144, 162 (1970).

55.     The facts are no different than if _arguendo_ the petitioners had argued that non-citizens were voting in the primary, and the court were to say that there was no harm because the non-citizens were not preventing the petitioners from voting or associating with the party.

56.     Therefore, it is the assertion of the Petitioners that allowing non-party voters to switch their party affiliation haphazardly and not meeting a minimum time period as established by law violates their rights of Equal Protection under the law.  Edelman v. Jordan, 415 U.S. 651, 680 (1974); Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985).


**Petitioners have standing to sue under § 1983 for violations of federal criminal law**

57.     Having resolved the issues of standing for the petitioners in the Fiduciary claims under § 1983 and the Equal Protection claims under the First and Fourteenth Amendments, the petitioners now turn their attention to their standing regarding the federal criminal Counts 3 – 5.

58.     The petitioners concur with the Magistrate that as a matter of law, the petitioners have no legal standing in which to bring a claim exclusively under § 241.  _See_ Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989).  However, a § 1983 claim accrues when a plaintiff has reason to know of the injury which is the basis of his action.  Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001).

59.     Therefore, in order to make out an actionable conspiracy under § 1983, a plaintiff has to prove not only a conspiratorial agreement but also an actual abridgment of some federally-secured right. Earle v. Benoit, 850 F.2d 836, 844 (1st Cir.1988).

60.     At trial, the petitioners proffer that they will be able to demonstrate to the court that both previous Secretaries of State and previous party chairmen have been aware of the changes in the law since 1987, which were precipitated based on the decision in Tashjian v. Republican Party of Conn., and have simply chosen to be deliberately indifferent to the unconstitutional interpretations of the state statutes governing the time and place of the primaries, and the limitations (or lack thereof) of who can participate in those primaries.

61.     By conspiring to ignore the plain language reading of RSA 654:34 and RSA 659:14, the codefendants have abridged the federally-secured rights of the petitioners to their freedom of association with fellow members of the Republican Party without the perceived interference by state regulation which (as interpreted by the Secretary of State) allows non-party members access to primary ballots when the courts have established that non-party members have no right to associate with the Republican Party.  *See* Lacasa v. Townley, 883 F.Supp.2d 1231 (2012); Timmons 520 U.S. at 357.

62.     Therefore, the petitioners have standing under 42 USC § 1983 to assert Counts 3 -5 as the reasons for the basis of their actions.  *See* Am.Compl. ¶¶ 51 – 54; Adickes v. S. H. Kress & Co., 398 U.S. 144, 162 (1970) ("whether a 'custom' for purposes of § 1983 must have the force of law"); Lindke v. Freed, 601 U.S. ----, --- S. Ct. ---, 2024 WL 1120880 * 8 (March 15, 2024).

63.     Furthermore, the petitioners, fully aware that "[o]nly the United States as prosecutor can bring a complaint under 18 USC §§ 241 – 242," recommended that the factual matters in this case be referred to the U.S. Attorney for the District of New Hampshire for possible criminal investigation under the RICO statutes – 18 USC §§ 1861 – 1868.  *See* Am. Compl. ¶ 54.

**Conclusion**

64.    Based on the foregoing, the petitioners request for Injunctive Relief should be granted

immediately.

<br><br>

                                        Respectfully Submitted,

                                        DAVID TESTERMAN, *N.H. State*
                                        *Representative, Merrimack County*
                                        *District 03*

Dated:  September 3, 2024               By:   /s/ David Testerman
                                        David Testerman, *pro se*
                                        Dave@sanbornhall.net
                                        9 Stone Avenue
                                        Franklin, New Hampshire 03235
                                        (603) 320-9524


                                        KAREN TESTERMAN, *both individually*
                                        *and as former New Hampshire Merrimack*
                                        *County Republican Committee (MCRC)*
                                        *Chair*

Dated:  September 3, 2024               By:   /s/ Karen Testerman
                                        Karen Testerman, *pro se*
                                        karen@karentesterman.com
                                        9 Stone Avenue
                                        Franklin, New Hampshire 03235
                                        (603) 934-7111

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was sent <u>by regular mail</u> and by electronic means to:

David Scanlan, Respondent
Secretary of State
ATTENTION: Brendan Avery O'Donnell
Election Law Unit Chief
New Hampshire Department of Justice
1 Granite Place, Concord, NH  03301
brendan.a.odonnell@doj.nh.gov
Telephone: 603-271-3658
Direct Dial: 603-271-1269

Chris Ager, Co-Respondent
Chairman, New Hampshire Republican State Committee
ATTENTION: Demetrio F. Aspiras, III, Esq.
Drummond Woodsum
670 N Commercial St, Ste 207
Manchester, NH 03101-1845
603-792-7414
603-716-2899 (fax)
daspiras@dwmlaw.com

Mark V. Franco, Esq.
Drummond Woodsum
84 Marginal Way, Ste 600
Portland, ME 04101
207 772-1941
mfranco@dwmlaw.com

Dated:  September 3, 2024                          /s/ Karen Testerman
                                                                    Karen Testerman, *pro se*