NO. 24 – 1819
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

**David Testerman,**
**Karen Testerman**
**PLAINTIFF-APPELLANT**

-vs-

**New Hampshire Secretary of State, et al.**
**DEFENDANT-APPELLEE**

**On Appeal from the United States District Court**
**For the District of New Hampshire**
**The Honorable Chief Judge Landya B. McCafferty, Presiding**

**D.C. No. 1:24-cv-00020-LM-AJ**

## RESPONSE TO SHOW CAUSE ORDER DATED SEPTEMBER 20, 2024

NOW COMES Republican primary voters <u>Karen Testerman</u> and NH state Representative <u>David Testerman</u>, (the "Plaintiffs-Appellants"), in the above captioned matter, respectfully respond to the court's Show Cause order regarding why this appeal should not be dismissed for lack of jurisdiction, dated September 20, 2024, for the following reasons:

**Background**

1. On January 22, 2024, the plaintiffs filed an Original Complaint as a "Complaint for Declaratory and Injunctive Relief," regarding the upcoming New Hampshire Presidential Primary, and the access to ballots by non-party members. ECF 1. The plaintiffs also filed an "Emergency Motion for Injunctive Relief." ECF 2.

Response to Show Cause Order - 1

2. On the same day, on January 22, 2024, the court denied the First Emergency Motion for Injunctive Relief, because the *pro se* plaintiffs failed to include an Affidavit with their Motion, pursuant to Rule 65(b)(1)(B). ECF 4.

3. On January 23, 2024, still before the impending Presidential primary, the plaintiffs filed a Second Emergency Motion for Injunctive Relief. This time, the plaintiffs provided an Affidavit and proper notice to the named Co-Defendants. ECF 5.

4. Also on January 23, 2024, the court again denied the second Motion for Injunctive Relief. This time, stating that in the Original Complaint: "<u>None of the plaintiffs' claims allege that their own constitutional rights have been violated</u>." <u>See</u> Order, pg. 2. ECF 7.

5. Because of the deficiencies regarding standing as described by the court in the Original Complaint and because the court granted the joinder of the New Hampshire Republican State Committee (NHRSC) on April 4, 2024, as an additional co-defendant, over the objections of the plaintiffs, the plaintiffs filed for Motion for Leave to File an Amended Complaint to cure the Original Complaint. ECF 31.

6. On May 30, 2024, The Court had a hearing on the Motion for Leave to File an Amended Complaint. <u>See</u> Docket Entry dated 05/30/2024.

7. At the conclusion of the motions hearing, Magistrate Johnstone stated that she would take the testimony and hearing exhibits under advisement and if there were further questions from the court, would give the parties an opportunity to respond.

8. On July 18, 2024, the plaintiffs filed their third request for injunctive relief, and expedited hearing, after the Presidential primary of January 2024, but well in advance of the anticipated <u>*state* primary election</u> on September 6, 2024. ECF 40.

9.  On August 14, 2024, the magistrate filed a first Report and Recommendation, stating that the plaintiffs' motion for leave to amend (ECF 31) should be denied based on futility. Further, the magistrate recommended that the original complaint (ECF 1) remains the operative complaint in the matter, despite the court's previous ruling that the Original Complaint was defective as to the matter of standing. ECF 45.

10. On August 28, 2024, the plaintiffs filed their Objections to the Magistrate's First Report and Recommendations, citing their reasons for why the amended complaint was not futile. ECF 47.

11. The following day, on August 29, 2024, the court approved the Magistrate's Report and Recommendation. *See* Endorsed Order, ECF Docket Report, 08/29/2024. This left the plaintiffs with no amended complaint before the court and a deficient original complaint, without remedy to cure any perceived deficiencies of standing by the court.

12. In addition, on August 14, 2024, U.S. Magistrate Judge Andrea K. Johnstone issued a procedural order for a preliminary *injunctive* hearing to be held on September 6, 2024, just four (4) days before the upcoming state primary election. Order, dated 08/14/2024, ECF 46.

13. Among other things, the court instructed the parties to assemble: a single timeline; a single statement of agreed facts; a witness list; an exhibits list; a proposed Findings of Fact and Rulings of Law; and a proposed order. *Id*.

14. The parties prepared their respective documents for the court in anticipation of the injunctive relief hearing. *See* Doc. Nos. 51, 52, 53, 54, 56, 57, 58.

15. However, at the previously scheduled time for the *injunctive relief hearing*, the magistrate declared that it was instead an *evidentiary hearing*, and that the magistrate would

issue a recommendation and report later, for which the parties would have an additional 14 days in which to object. 28 U.S.C. § 636.

16. With the primary election less than four (4) days away, the plaintiffs did not have an opportunity to properly present their third motion for injunctive relief.

17. Indeed, on September 9th, 2024, the following Monday after the magistrate had conducted the substituted evidentiary hearing (and the plaintiffs had filed an interlocutory appeal with the First Circuit), the court quickly convened a hearing the day before the state primary election, scolding the plaintiffs that they had 14 days in which to object to the magistrate's second report and recommendation, and that:

> "*So ultimately if in fact I'm going to rule similarly to Judge Johnstone and if you want to appeal that to the First Circuit and be vindicated at the First Circuit before the primary, then what I'm saying to you is you should file that pronto.*" <u>See</u> Tr. Of Special Hearing, dated September 9, 2024, pg. 6, lines 21 – 24.

18. Ultimately, there was insufficient time between the judge's ruling later that day (Monday, September 9, 2024) and the primary election on the following day (Tuesday, September 10, 2024) to mount an appeal before the primary election took place.

19. Because of the unnecessary delays in giving the appearance of an expedited injunctive relief hearing, and the maladministration of this case, the lower court has prejudiced the plaintiffs from their constitutional rights of remedy and equal protection, to effectively separate the votes of the Undeclared Voters from the publicly-affiliated, registered Republican voters on both presidential and state primary election day, while this matter was pending.

## Appellants have standing based on Article III of the U.S. Constitution; NH. Const. pt. 1, arts. 2, 12 & 14; 28 U.S.C. § 1343(3); RSA § 659:27; *Solomon v. Miami Woman's Club* (1971); and *Baker v. Carr* (1962)

20. In the lower court, the Appellants proffered <u>five</u> (5) reasons why they are entitled to **standing** under Article III of the United States Constitution and the state constitution for remedy (NH Const. pt. 1, art. 14) and equal protection (NH Const. pt.1 arts. 2 & 12).

21. <u>First</u>, as a matter of statutory law, the court should have granted, at a *de minimus*, an injunction for those ballots that will be cast by Undeclared "voter[s] registered in the town or ward [of the Plaintiffs] in which the election is held," in order that standing could be conferred on the plaintiffs so that the district court could get to the underlying complaint. <u>See</u> <u>N.H. R.S.A. § 659:27</u>; <u>see also</u> <u>N.H. R.S.A § 659:27-a</u> (a voter may challenge another voter for many reasons, including the statement: "*This is a primary and the person seeking to vote in the (state political party name) _____ primary is not a declared member of the party he or she claims to be affiliated with.*"

22. In simpler words, the court should have conferred standing on the plaintiffs because they are entitled to challenge voters under RSA § 659:27 in their home precinct, for the reasons stated in their complaint, without reaching the larger issue of standing for the entire election process.

23. Plaintiffs contend that Undeclared Voters and Same-Day Registration Voters have caused irreparable harm and deprived the plaintiffs of their First Amendment right to freedom of association, in now both the Presidential and state primaries of 2024. <u>See</u> <u>Plaintiff's Motion for Injunctive Relief</u>, ¶¶ 25 – 27, ECF 40, <u>Exhibit A</u>.

24. <u>Second</u>, under <u>28 U.S.C. § 1343 (a) (3)</u>, the law states that:

> "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced **by any person** * * * (t)o redress the deprivation, **under color of any State law**, **statute**, ordinance, regulation, **custom or usage**, of any right, privilege or immunity secured by the Constitution of the United States * * *."

25. The plaintiffs invoke 28 USC § 1343(3) as having <u>standing</u> before the District Court "by any person [singular]," under color of any State law, statute, custom or usage, of their rights secured by the Constitution of the United States.

26. In the Second Report and Recommendation, the Magistrate attempted to argue that the plaintiffs have no standing, based on 28 U.S.C. § 1343(a)(3), stating that "*[t]he Testermans imply that the statute creates a type of automatic standing, because they are asserting that their Constitutional rights were violated. This is a misreading of the statute*," citing <u>Celauro v. Whole Foods Mkt.</u>, No. 21-CV-00310-KLM, 2021 WL 4844538, at * 3 (Not Reported in Fed. Supp.) (D. Colo. Oct. 18, 2021). *See* <u>R&R at * 17</u>, ECF 73.

27. However, in other jurisdictions, the courts have agreed with the Testerman's regarding the liberal application of standing. In *Solomon v. Miami Woman's Club*, the court said that the policy behind the relief afforded by this section [1343(a)(3)] is that requirements for standing to litigate are to be <u>broadly construed</u>. *See* Solomon v. Miami Woman's Club, 359 F.Supp. 41 (S.D. Fla. 1971). "Under these circumstances, plaintiffs have comfortably cleared a standard of reasonableness for the standing requisite for judicial review." <u>Solomon, 359 F.Supp. at 43</u>.

28. When a federal law grants a civil right, persons protected by that law are authorized to bring actions to enforce the right and federal district courts have jurisdiction of such actions. *See* Spotted Eagle v. Blackfeet Tribe of Blackfeet Indian Reservation, City of Browning, 301 F.Supp. 85 (D. Mont. 1969).

29. As neither of the decisions in *Celauro v. Whole Foods Mkt.* and *Solomon v. Miami Woman's Club* are binding on this circuit, the matter of standing would be one of first impression for this court's appellate jurisdiction.

30. <u>Third</u>, the underlying complaint in this matter is: the Secretary of State may not interpret a state statute in a fashion which instructs a citizen to commit fraud (e.g., willful perjury). As such, the Secretary of State has violated the plaintiffs' states' rights for remedy (NH Const. pt. 1, art. 14) and equal protection (NH Const. pt.1 arts. 2 & 12).

31. The two laws RSA 659:14 and RSA 654:34 cannot be interpreted separately without making RSA 654:34 unconstitutional.

32. As the plaintiffs have argued multiple times in this matter – such an interpretation of the two statutes *separately* renders the purpose of closing the primary in RSA 659:14 <u>*meaningless*</u> and creates two separate classes of voters – (1) publicly-affiliated political party voters and (2) non-party voters who may choose to never publicly-affiliate with the political party, yet still are illegally allowed to vote in a primary for which they have no freedom to associate. *See* <u>Lacasa v. Townley</u>, 883 F.Supp.2d 1231 (2012).

33. If a New Hampshire voter challenges another voter as not being a declared member of the party (RSA 659:27-a), then "the moderator shall not receive the vote of the person so challenged <u>until the person signs and gives to the moderator an affidavit</u> (emphasis added)," affirming their party affiliation. (RSA 659:27).

34. Under RSA 654:34, II (b), the law states: "A voter may also register as a member of a party <u>at any primary</u> by requesting to be registered as a member and voting the ballot of the party of the voter's choice. A voter may also <u>register once again as an undeclared voter after voting in a primary as a registered member of a party</u> by returning the card or signing the list of undeclared voters from the statewide centralized voter registration database provided for in paragraph V (emphasis added)."

35. Under the construction employed by the Secretary of State, when read by itself without the "open primary" language of RSA 659:14, the Secretary of State is encouraging Undeclared voters to commit fraud by:

36. (1) allowing same-day registration as a *temporary* Republican party member, as "day-of-primary" voters (*see* R&R at * 4, ECF 73);

37. (2) voting in the Republican party as equal to publicly-affiliated party members;

38. (3) then un-registering at the back of the polling place, as an Undeclared voter once again, without ever having met the public affiliations test. *See* Rosario v. Rockefeller, 410 U.S. 752 (1973); Eu v. San Francisco County Democratic Central Comm., 489 U.S. 214, 224 (1989); Tashjian v. Republican Party of Connecticut, 479 U.S. 208, 214 (1986); and Clingman v. Beaver, 544 U.S. 581, 592 (2005).

39. However, if the state statutes RSA 659:14 and RSA 654:34, II (b) are read together, under the construction as proscribed by the plaintiffs, the following legitimate **legal** actions shall take place:

40. (1) The party must first vote to adopt a rule in which undeclared voters may vote in the upcoming primary election until rescinded by the party;

41. (2) The party chairman must next notify the Secretary of State of the "open" primary rule adoption;

42. (3) Undeclared voters may publicly-affiliate with the party "for the day", and then return to Undeclared status without having committed fraud; and

43. (4) The process repeats itself until the party rescinds its open primary rule.

44. The Secretary of State's construction misapplies the state statutes RSA 659:14 and RSA 654:34, II(b) **separately**, thereby encouraging Undeclared voters to commit fraud by perjuring

themselves, regarding their ongoing party affiliation. See Motion for Injunctive Relief, ¶¶ 10 – 17, Exhibit A, ECF 40.

45. There can be "no sovereign immunity when [a court is asked to declare someone's rights under a statute]. The state is not above its own ... laws." University of Kentucky v. Moore, 599 S.W.3d 798, 813 (2019); Green v. Mansour, 474 U.S. 64, 79 (1985) (Brennan, J., dissenting) ("Because the disputes in the instant case are between citizens and their own State and because a federal question is the source of federal-court jurisdiction, the Eleventh Amendment, properly construed, is no bar to petitioners' suits").

46. Fourth, as established in the recent New Hampshire Supreme Court decision, Daniel Richard v. Governor, 2024 N.H. 53 (Sept. 12, 2024), --- A.3d --- (2024), fraudulent acts that dilute the votes of some have long been held to be within judicial cognizance. Baker v. Carr, 369 U.S. at 247 – 48. Therefore, the New Hampshire Supreme Court recognizes the same argument in *Daniel Richard* as in this instant case, that a single voter may challenge in court the dilution of his or her vote.

47. In Baker v. Carr, the court stated that: "We hold that the appellants do have standing to maintain this suit. […] that voters who allege facts showing disadvantage to themselves as individuals have standing to sue. These appellants seek relief in order to protect or vindicate an interest of their own, and of those similarly situated (emphasis added)." Baker v. Carr, 369 U.S. at 206 – 07.

48. And finally, the court makes issue that the *pro se* litigants, while enumerating themselves individually and collectively as members of the Merrimack County Republican Committee (Orig. Compl. ¶ 19), and listing their perceived harm, have failed to "*allege that their **own** constitutional rights have been violated* (emphasis added)." See Order, pg. 2, (ECF 7).

49. However, in the Magistrate's second report, the Magistrate argued that the court had liberally construed the *pro se* litigants original complaint in its decisions, "infer[ing]" that their own rights were being violated, rather than relying on the complaint's literal language. See R&R at * 11, Doc. No. 73. However, this is not quite true.

50. In the judge's order denying the Plaintiff's Second Motion for Injunctive Relief (Doc. No. 7), the judge stated that "*[i]f the court were to construe the complaint in that manner, doc. no. 5 would fail because the plaintiffs, who have not requested a hearing, fail[ed] to show that the have third-party standing to assert the Party's constitutional rights.*" See Order at * 3, dated January 23, 2024, Doc. No. 7.

51. As such, the court ordered that the first motion for injunctive relief failed because the plaintiffs did not include the appropriate affidavit, and in the second motion for injunctive relief, the court ordered that the plaintiffs failed to allege that their own constitutional rights had been violated and that the plaintiffs failed to show that they had third-party standing to assert the NHRSC's constitutional rights – not the MCRC's constitutional rights.

52. Therefore, in the judge's rejection of the Second Motion for Injunctive Relief, the judge is stating that the Original Complaint was defective.

53. The plaintiffs attempted to rectify this lapse of wording in their Amended Complaint. However, the court dismissed that Amended Complaint as being futile. So, the original wording still stands.

54. To reiterate *Baker v. Carr*, appellants have standing to seek relief in order to protect or vindicate an interest of their own, and of those similarly situated. Baker v. Carr, 369 U.S. at 206 – 07.

55. A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976).

56. It is clear that the plaintiffs believed themselves to be both individually harmed (and collectively as officers/members of the Merrimack County Republican Committee), and other similarly situated Merrimack County Republican primary voters, by allowing unaffiliated voters to participate in what should have been a closed primary for the Republican Party.

57. As such, the plaintiffs reserve the right to move to amend their complaint, in order to repair any perceived deficiencies by the court in elucidating their complaint effectively, based on <u>Estelle v. Gamble</u>.

**Conclusion**

58. Therefore, the plaintiffs have standing to bring forward this appeal (individually and collectively as officers/members of the Merrimack County Republican Committee) based on their concrete injury of vote dilution of those Undeclared voters who have no fundamental right of association with the Republican Party. <u>See</u> <u>Lacasa v. Townley</u>, 883 F.Supp.2d 1231 (2012); <u>Timmons v. Twin Cities Area New Party</u>, 520 U.S. 351, 357 (1997). The plaintiffs have standing under: Article III of the U.S. Constitution; the state constitution for remedy (NH Const. pt. 1, art. 14) and equal protection (NH Const. pt.1 arts. 2 & 12); RSA § 659:27; <u>Baker v. Carr</u>, 369 U.S. 186 (1962); <u>Spotted Eagle v. Blackfeet Tribe of Blackfeet Indian Reservation, City of Browning</u> (D. Mont. 1969); and <u>Solomon v. Miami Woman's Club</u>, 359 F.Supp. 41, 43 (S.D. Fla. 1971).

Respectfully Submitted,

DAVID TESTERMAN, *N.H. State Representative, Merrimack County District 03*

Dated: October 30, 2024        By:   /s/ David Testerman
David Testerman, *pro se*
Dave@sanbornhall.net
9 Stone Avenue
Franklin, New Hampshire 03235
(603) 320-9524

KAREN TESTERMAN, *both individually and as former New Hampshire Merrimack County Republican Committee (MCRC) Chair*

Dated: October 30, 2024        By:   /s/ Karen Testerman
Karen Testerman, *pro se*
karen@karentesterman.com
9 Stone Avenue
Franklin, New Hampshire 03235
(603) 934-7111

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was sent by electronic means to:

David Scanlan, Respondent
Secretary of State
ATTENTION: Brendan Avery O'Donnell
Election Law Unit Chief
New Hampshire Department of Justice
1 Granite Place, Concord, NH 03301
brendan.a.odonnell@doj.nh.gov
Telephone: 603-271-3658
Direct Dial: 603-271-1269

Chris Ager, Co-Respondent
Chairman, New Hampshire Republican State Committee
ATTENTION: Demetrio F. Aspiras, III, Esq.
Drummond Woodsum
670 N Commercial St, Ste 207
Manchester, NH 03101-1845
603-792-7414
603-716-2899 (fax)
daspiras@dwmlaw.com

Mark V. Franco, Esq.
Drummond Woodsum
84 Marginal Way, Ste 600
Portland, ME 04101
207 772-1941
mfranco@dwmlaw.com

Dated: October 30, 2024                 /s/ Karen Testerman
                                        Karen Testerman, *pro se*